1. Quillie Harvey H-28106

2. P.O. Box 1050

3. Soledad, CA. 93960

4.

5. In Pro Per,

6.

7.

8. Quillie L. Harvey Jr.
   (Plaintiff)

9.

10. V.

11. M.S. Evans
    (Defendant).

12.

FILED

08 AUG 28 PM 1:51

[illegible stamp]

United States District Court

Northern District of California

Case No. C-08-3723 CRB (PR)
"Motion for Reconsideration";
Objection to the Courts Finding."

13.  Comes Now Plaintiff Quillie Harvey in the above captioned action.

14. On Aug. 25, 2008 Plaintiff received the Courts order dismissing his complaint.

15. In this order the Court stated that Plaintiff challenge to the rules violation

16. report (R.V.R) was a duplicate of a claim that he had filed and had been dis-

17. missed in Case No. C-07-1244 CRB (PR). The Court has a misconception of the facts.

18.      In Case No. C-07-1244 CRB (PR) Plaintiff challenged the improper class-

19. ification in which Plaintiff was held in ad.seg. which is suppose to be a tempo-

20. rary placement for 11 months. (See Exhibit A) No where in that complaint

21. did Plaintiff challenge the finding of guilt of a R.V.R. for possession of a wea-

22. pon. Nowhere in that complaint does Plaintiff challenge the denial of a staff

23. assistant or witnesses denied him a fair & impartial hearing in violation of

24. the 14th Amendment as he does in this complaint.

25.      Furthermore In the Courts order in Case No. C-07-1244 CRB (PR) the Court

26. labels the claim as improper classification. The order also properly states that

27. Plaintiff was alleging that "Plaintiff claims he was denied due process because

28.

1. He should have served the SHU term in the SHU rather than Ad. Seg." (see exhibit B)
2.        The August 20, 2008 order also states "Plaintiff now alleges that
3. the June 2005 disciplinary finding was used to deny him parole in 2007 does not
4. compel a different result." It also states "After all the attachments to
5. plaintiff's complaint make clear that other factors weighed against plaintiff
6. at his suitability hearing." As shown in the exhibits the R.V.R. was reissued, re-
7. heard and the R.V.R. showed up twice when it was for the same R.V.R. the posses-
8. of weapon is the only R.V.R. that plaintiff had before that hearing and plaintiff
9. hasn't had an R.V.R since without the possession of weapon plaintiff would be
10. 5 years clean.
11.        The complaint is about a fair & impartial hearing which plaintiff did not
12. receive.  BURNSWORTH v. GUNDERSON 179 F.3d 771 (C.A.9 (ARiz.) 1999) reads in part
13. "plaintiff's due process rights are violated even if plaintiff has demonstrated no cogniz-
14. able liberty interest." "And the concept that once the state conducts a hearing it must
15. be a fair one is not limited to the clemency context." (see exhibit C)
16.        For the above stated reasons plaintiff objects to the findings &
17. respectfully ask the court to reconsider.
18.
19.                                        Respectfully Submitted,
20.                                        Quillie Harvey
21. DATED: 8-26-08                          Quillie Harvey
22.
23.
24.
25.
26.
27.
28.
                                        2.

# Exhibit



CI2I3
555

1    **COMPLAINT BY A PRISONER UNDER THE CIVIL RIGHTS ACT, 42 U.S.C §§ 1983**    FILED

2    Name HARVEY           Quillie        L.

3         (Last)                    (First)              (Initial)   MAR - 2 2007

4    Prisoner Number  _H· 28106_                    RICHARD W. WIEKING
                                                 CLERK, U.S. DISTRICT COURT
5    Institutional Address  _SALINAS VALLEY STATE PRISon, P.O. Box 1050, Soledad, CA 93960_   NORTHERN DISTRICT OF CALIFORNIA

6    ====================================================================

7                         UNITED STATES DISTRICT COURT
                         NORTHERN DISTRICT OF CALIFORNIA    C 07   1244

8    _Quillie L. HARVEY_                        )
9    (Enter the full name of plaintiff in this action)  )    20      0
                                                         )
10                    vs.                                )    Case No. _____
                                                         )    (To be provided by the Clerk of Court)   CRB
11   _ARNOld SchWARZENEGGER et al._             )
                                                )    **COMPLAINT UNDER THE**
12   _____            )    **CIVIL RIGHTS ACT,**
                                                )    **Title 42 U.S.C § 1983**
13   _____            )
                                                )
14   _____            )                              [PR]
15   (Enter the full name of the defendant(s) in this action)  )

16   *[All questions on this complaint form must be answered in order for your action to proceed..]*

17   I.    Exhaustion of Administrative Remedies.

18         [**Note:** You must exhaust your administrative remedies before your claim can go

19         forward.  The court will dismiss any unexhausted claims.]

20         A.    Place of present confinement  _SALINAS VALLEY STATE PRISON_

21         B.    Is there a grievance procedure in this institution?

22               YES (✓)    NO ( )

23         C.    Did you present the facts in your complaint for review through the grievance

24               procedure?

25               YES (✓)    NO ( )

26         D.    If your answer is YES, list the appeal number and the date and result of the

27               appeal at each level of review.  If you did not pursue a certain level of appeal,

28               explain why.

COMPLAINT                         - 1 -

1. Quillie Harvey H-28106
2. Salinas Valley State Prison
3. P.O. Box 1050
4. Soledad, CA. 93960
5.
6.   IN PRO PER,
7.                                    United States District Court
8.                                    Northern District of California
9. Quillie L. Harvey Jr.,
     (Plaintiff)
10.                                         Complaint for Permanent In-
                                            Juction, Damages, and Demand
11. V.                                      for Jury Trial.
12. A. Schwarzenegger et al.,
     (Defendants).
13.
14.    INTRODUCTION
15.    This is Plaintiffs Complaint for Damages under 42 U.S.C. §§ 1983,
16. alleging violations of the First, Fourth, Eighth, and Fourteenth Amendments to
17. the United States Constitution. Violations of State Law as well as the Cali-
18. fornia Constitution.
19.    JURISDICTION
20.    1. The Court has jurisdiction over Plaintiffs claims of Violations of Federal
21. Constitutional rights protected by the U.S. Constitution under 42 U.S.C. §§ 1331 (a)
22. and 1343.
23.    2. The Court has jurisdiction over possible State Law Tort claims under 28 U.S.C.
24. § 1367.
25.    PARTIES
26.    3. Plaintiff Quillie Harvey at all times mentioned in this complaint was incarce-
27. rated at Salinas Valley State Prison.                DEFENDANTS
28.

1.

4. ARNOLD SCHWARZENEGGER WAS THE GOVENOR OF CALIFORNIA DURING THE EVENTS HE IS SUED IN HIS OFFICIAL CAPACITY.

5. JAMES TITON . WAS THE SECRETARY OF CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION DURING THE EVENTS HE IS SUED IN HIS OFFICIAL : INDIVIDUAL CAPACITY.

6. M. S. EVANS WAS THE WARDEN OF SALINAS VALLEY STATE PRISON DURING THE EVENTS HE IS SUED IN HIS OFFICIAL AND INDIVIDUAL CAPACITY.

7. D. TRAVERS WAS AN OFFICER AT SALINAS VALLEY STATE PRISON (S.V.S.P.) DURING THE EVENTS HE IS SUED IN HIS INDIVIDUAL CAPACITY.

8. J.W. MOSS WAS AN OFFICER AT S.V.S.P DURING THE EVENTS HE IS SUED IN HIS INDIVIDUAL CAPACITY.

9. E. SCRIBNER WAS AN OFFICER AT S.V.S.P. DURING THE EVENTS HE IS SUED IN HIS INDIVIDUAL CAPACITY.

10. M.P. MOORE WAS AN OFFICER AT S.V.S.P. DURING THE EVENTS HE IS SUED IN HIS INDIVIDUAL CAPACITY.

11. SOTELO WAS AN OFFICER AT S.V.S.P. DURING THE EVENTS HE IS SUED IN HIS INDIVIDUAL CAPACITY.

12. A. HEDGPETH WAS AN OFFICER AT S.V.S.P. DURING THE EVENTS HE IS SUED IN HIS INDIVIDUAL CAPACITY.

13. L. LAFFERTY WAS A MAIL ROOM OFFICER DURING THE EVENTS HE/SHE IS SUED IN HIS/HER INDIVIDUAL CAPACITY.

14. P. D. VERA WAS EMPLOYED BY CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATIONS (C.D.C.R) DURING THE EVENTS HE/SHE IS SUED IN HIS/HER INDIVIDUAL CAPACITY.

15. S.M. RODRIGUEZ WAS AN OFFICER AT S.V.S.P. DURING THE EVENTS HE IS SUED IS HIS INDIVIDUAL CAPACITY.

16. M. MENDEZ WAS AN OFFICER DURING THE EVENTS AT S.V.S.P. HE IS SUED IN HIS INDIVIDUAL CAPACITY.

17. S. YOUNCE WAS AN OFFICER AT S.V.S.P. DURING THE EVENTS HE IS SUED IN HIS INDIVIDUAL

1. CAPACITY.

2. 18. CHARLES LEE WAS EMPLOYED BY S.V.S.P. DURING THE EVENTS HE IS SUED IN HIS IN-
3. DIVIDUAL CAPACITY.

4. 19. NGUYEN WAS EMPLOYED BY S.V.S.P. DURING THE EVENTS HE IS SUED IN HIS INDIVIDUAL
5. CAPACITY.

6. 20. J. IPPOLITO WAS AN OFFICER DURING THE EVENTS HE IS SUED IN HIS INDIVIDUAL CAPA-
7. CITY.

8. 21. ELOY MEDINA WAS AN OFFICER DURING THE EVENTS HE IS SUED IN HIS INDIVIDUAL
9. CAPACITY.

10. 22. ALL TIMES IN THIS COMPLAINT EACH DEFENDANT HAS ACTED AND WAS ACTING
11. UNDER THE COLOR OF STATE LAW.

12. _FACTS_

13. 23. C.D.C.R. HAS CREATED A SYSTEM OF VIOLATIONS OF THE CONSTITUTION : STATE
14. LAW THAT CONSTITUES CRUEL : UNUSUAL CONDITIONS OF CONFINEMENT.

15. 24. ON 7-18-05 SALINAS VALLEY STATE PRISON (S.V.S.P.) WAS PLACED ON LOCK DOWN
16. DUE TO A ASSAULT ON A PEACE OFFICER. THIS ASSAULT HAPPENED ON FACILITY C.

17. 25. PLAINTIFF WAS HOUSED IN FACILITY D WHEN THIS HAPPENED WHICH WAS AD-
18. MINISTRATION SEGREGATION (Ad. SEG.).

19. 26. ON 7-24-05 PLAINTIFF FILED AN INMATE APPEAL STATING HE WAS BEING DENIED
20. OUTDOOR EXERCISE DUE TO AN EXAGGERATED RESPONSE TO SECURITY NEEDS. PLAINTIFF WAS
21. INTERVIEWED BY LIEUTENANT (LT.) G.BIAGGINI CONCERNING THIS APPEAL. SEE EX-
22. HIBIT A (PXA).

23. 27. DURING THE INTERVIEW PLAINTIFF EXPLAINED TO LT. G. BIAGGINI THAT Ad. SEG.
24. BEING KEPT ON LOCKDOWN DID NOT JUSTIFY A PENELOGICAL GOAL. G. BIAGGINI TOLD PLAIN-
25. TIFF THAT HIM ALONG WITH ALL OF THE TOP RANKING OFFICIALS AT S.V.S.P. HAD A MEETING.
26. THAT THOSE OFFICIALS HAD AGREED THAT THEY WERE NOT GOING TO ALLOW PRISONERS TO
27. CONSPIRE AND ASSAULT STAFF THEN REWARD THEM BY GIVING THEM PROGRAM IN Ad. SEG.

28.

3.

28. PLAINTIFF did NOT RECEIVE OUTDOOR EXERCISE FROM JUNE 29TH 2005 TO SEPTEMBER 21, 2005 DUE TO THIS EXAGGERATED RESPONSE TO SECURITY NEEDS.

29. ON 9-21-05 PLAINTIFF FILED AN INMATE APPEAL DUE TO BEING MADE UNWILLINGLY APART OF A ATTEMPTED MURDER INVESTIGATION. SEE (P X B)

30. ON 9-15-05 OFFICER A. MERCADO CAME TO PLAINTIFFS CELL AND TOLD HIM SHE WAS CONDUCTING AN INTERVIEW. PLAINTIFF TOLD A. MERCADO THAT HE WISHED TO EXERCISE HIS RIGHT TO NOT SPEAK DUE TO HIS BELIEF. SEE (PX B)

31. A. MERCADO TOLD PLAINTIFF THAT SHE WAS TOLD TO ADVISE ALL PRISONERS WHO RE- FUSED TO PARTICIPATE, WOULD NOT RECEIVE OUTDOOR EXERCISE, CANTEEN & LAW LIBRARY. AT THIS TIME PLAINTIFF HAD NOT RECEIVED OUTDOOR EXERCISE OR BEEN ABLE TO GO TO CANTEEN TO BUY HYGIENE FOR 83 DAYS. PLAINTIFF BEGRUDGINGLY PARTICIPATED IN THE INTERVIEW PROCESS.

32. S.V.S.P. OFFICIALS KNOWS THAT THIS INTERVIEW PROCESS VIOLATES PRISONER RIGHTS. SEE (PX C)

33. S.V.S.P. HAS ESTABLISHED A POLICY WHERE STAFF COMPLAINTS ARE NOT PROPERLY IN- VESTIGATED, WHICH HAS CREATED AN ATMOSPHERE OF BLATANT STAFF MISCONDUCT.

34. ON 12-11-05 PLAINTIFF FILED AN INMATE APPEAL "STAFF MISCONDUCT" DUE TO OFFICER SOTELO USING CELL SEARCHES TO HARASS. SEE (PX D)

35. PLAINTIFF ALLEGED THAT PERSONAL BOOKS WERE THROWN AWAY FROM HIS CELL AND THAT NO CELL SEARCH SLIP WAS LEFT IN THE CELL PER INSTITUTION POLICY TO IDENTIFY WHO SEARCHED PLAINTIFFS CELL. SEE (PX D)

36. J.D. BENNETT DID AN INVESTIGATION CONCERNING THE APPEAL AND FAILED TO DETER- MINE OR EVEN ASK THE QUESTIONS, WHO SEARCHED PLAINTIFFS CELL. WAS PLAINTIFFS PERSONAL BOOKS THROWN AWAY AND DID OFFICER SOTELO TELL THE OFFICERS TO STRIP PRISONERS OF EVERYTHING. SEE (PX D)

37. S.V.S.P. HAS A SET UP A SYSTEM THAT VIOLATES ALL PROCEDURES ESTABLISHED IN THE CALIFORNIA CODE OF REGULATIONS TITLE 15 CONCERNING CLASSIFICATION OF AD. SEG. PRISONERS.

38. ON 11-3-05 PLAINTIFF FILED AN INMATE APPEAL CONCERNING DUE PROCESS AS TO CLASSIFICATION/ADJUDICATION OF HIS R.V.R (RULES VIOLATIONS REPORT).

39. D. TRAVERS WHO WAS A ASSOCIATE WARDEN WAS RESPONSIBLE FOR PLAINTIFFS CLASSIFICATION/ HAD THE JOB OF FINALIZING THE R.V.R. D. TRAVERS FAILED TO do THIS WHICH CAUSED PLAINTIFF TO BE dUNGEON/WAREHOUSED WITHOUT THE PROCESSES DUE.

40. D. TRAVERS FAILURE TO GIVE PLAINTIFF THE PROCEDURES DUE DENIED PLAINTIFF HIS S.H.U. (SECURITY HOUSING UNIT) ENTITLEMENTS, FOR 11 MONTHS.

41. ON 1-24-06 PLAINTIFF FILED AN INMATE APPEAL ON L. LAFFERTY AND THE MAILROOM STAFF AT S.V.S.P. THIS WAS dUE TO PLAINTIFFS MAIL BEING TAMPERED WITH IN RETALIATION FOR PLAINTIFFS INQUIRY INTO WHO WAS RESPONSIBLE FOR LOCATING PRISONERS. SEE (PXF)

42. L. LAFFERTY RESPONDED TO PLAINTIFFS' INQUIRY BY SENDING PLAINTIFFS' MAIL TO THE WRONG CELL AND ALONG WITH OTHER UNIDENTIFIED MAILROOM STAFF STARTED OPENING PLAINTIFFS LEGAL MAIL OUT OF PLAINTIFFS PRESENCE.

43. PLAINTIFFS MAIL WAS ALSO TAKING 27 DAYS TO GET TO HIM. PLAINTIFF ADDRESSED THIS IN THE APPEAL AND A. HEDGPETH FABRICATED THAT S.V.S.P. PRISONERS WERE GETTING MAIL WITHIN THE 7 DAY TIME CONSTRAIT OPPOSED BY C.D.C.R. A. HEDGPETH KNEW THIS TO BE UNTRUE BECAUSE AS THE ACTING CHEIF DEPUTY WARDEN HE WAS OVER SEEING PLENTY OF APPEALS ABOUT S.V.S.P.S' MAIL SYSTEM.

44. PLAINTIFF SENT THIS APPEAL TO THE 3rd LEVEL AND THE APPEAL EXAMINER WAS P.D. VERA. PLAINTIFF HAD PLACED A ENVELOPE ON THE APPEAL AS SUPPORTING DOCUMENT THAT SHOWED CONFLICTION IN THE STAMP OF THE dATE PLAINTIFFS MAIL ENTERED THE IN- STITUTION. P.D. VERA CONFISCATED THE SUPPORTING DOCUMENT AND did NOT RETURN IT WITH THE INMATE APPEAL.

45. ON JUNE 28, 2006 PLAINTIFF FILED A 42 U.S.C. §§ 1983. THIS COMPLAINT No. WAS C-06-4231 CRB (PR). ON JULY 17 2006 THIS CASE WAS dISMISSED WITHOUT PREJUDICE TO REFILING AFTER EXHAUSTING CALIFORNIA'S PRISON ADMINISTRATIVE PROCESS. PLAIN-

5.

1. TIFF HAS NOW EXHAUSTED HIS ADMINISTRATIVE REMEDIES AND BRINGS THESE ISSUES IN
2. THIS COMPLAINT.

3. 46. ON 6-14-05 PLAINTIFF WAS PLACED IN ADMINISTRATIVE SEGREGATION (Ad. SEG.).
4. PLAINTIFFS' PERSONAL TENNIS SHOES WERE TAKEN FROM HIM AND PLAINTIFF WAS GIVEN "JAP
5. FLAPS" OR WHATS KNOWN AS KARATE SHOES.

6. 47. PLAINTIFF BEGAN TO DO HIS OUTDOOR EXERCISE OF RUNNING & CALLISTHENICS, ON THE
7. CONCRETE IN THE JAP FLAPS.

8. 48. AFTER A MONTH PLAINTIFFS' FEET BECAME SORE & SWOLLEN. PLAINTIFF COMPLAINED TO
9. TO DOCTOR NGUYEN. DOCTOR NGUYEN TOLD PLAINTIFF THAT THERE WAS NOTHING HE COULD DO.

10. 49. PLAINTIFF SEEN NUMEROUS INMATES WITH THEIR PERSONAL SHOES IN Ad.SEG. PLAINTIFF
11. INQUIRED HOW THEY GOT TO DO SO. PLAINTIFF WAS TOLD THAT DOCTOR NGUYEN SENT THEM TO SEE
12. THE PODIATRIST AND THEY WERE GIVEN A CHRONO TO WEAR THEIR TENNIS SHOES.

13. 50. PLAINTIFF WENT BACK TO SEE DOCTOR NGUYEN, AUGUST OF 2005. PLAINTIFF TOLD DOCTOR
14. NGUYEN THAT HIS FEET WAS WORSE AND HE WAS TOLD THAT DOCTOR NGUYEN COULD SEND PLAINTIFF
15. TO SEE THE PODPATRIST. DOCTOR NGUYEN SAID HE COULD BUT PLAINTIFF NEVER ASKED HIM TO
16. DO THAT. PLAINTIFF SAID "I ASKED YOU WHAT YOU COULD DO AND YOU SAID NOTHING."
17. DOCTOR NGUYEN THEN WROTE THE PROPER REQUEST FOR PLAINTIFF TO SEE THE PODIATRIST. SEE
18. (P X 6)

19. 51. ON 10-26-05 PLAINTIFF WENT TO SEE THE PODIATRIST. SOON AS THE PODIATRIST SEEN
20. THE "JAP FLAPS" HE ASKED PLAINTIFF "HAVE YOU BEEN EXERCISING IN THOSE?" PLAINTIFF SAID
21. "YES". HE ASKED WHAT KINDS PLAINTIFF SAID RUNNING & CALLISTHENICS. HE SAID "I ALREADY
22. KNOW THE PROBLEM TAKE YOUR SHOES & SOCKS OFF." WHEN PLAINTIFF DID SO, HE SEEN THAT PLAIN-
23. TIFFS' FEET WERE SWOLLEN. HE ORDERED X-RAYS ON PLAINTIFFS FEET. SEE (PXB)

24. 52. ON 11-13-05 PLAINTIFF WROTE AN INMATE APPEAL ABOUT THE IMPROPER CLOTHING ATTIRE
25. GIVEN IN Ad.SEG. THE APPEAL WAS DENIED IN THE RESPONSE IT READ "IF YOU HAVE A MEDICAL
26. PROBLEM NECESSITATING THE USE OF TENNIS SHOES A MEDICAL CHRONO WILL BE ISSUED AND
27. TENNIS SHOES WILL BE ISSUED." THE RESPONSE WAS DATED 12-15-05.

6.

28.

1. 53. ON 12-12-05 PLAINTIFF WENT BACK TO SEE THE PODIATRIST. PLAINTIFF X-RAYS WERE
2. BACK WHICH SHOWED THAT PLAINTIFFS FEET WERE IN NORMAL LIMITS BUT WERE SWOLLEN. AT THAT
3. TIME PLAINTIFF ASKED THE PODIATRIST FOR A SOFT SHOE CHRONO.

4. 54. THE PODIATRIST SHOWED PLAINTIFF A MEMORANDUM DATED IN 2002 AND SAID HE COULD
5. NOT GIVE AD.SEG. PRISONERS A SOFT SHOE CHRONO ANYMORE. HE TOLD PLAINTIFF TO COME BACK
6. WHEN PLAINTIFFS SH.U. WAS UP. SEE (PXG)

7. 55. ON 1-2-06 PLAINTIFF SENT THE PODIATRIST THE RESPONSE OF PLAINTIFFS CLOTHING ATTIRE APPEAL
8. LETTING HIM KNOW THAT A CHRONO WOULD BE HONORED. ALSO THAT THE MEMORANDUM WAS OUT DATED,
9. AND AD.SEG. PRISONERS WERE BEING ALLOWED TENNIS SHOES.

10. 56. PLAINTIFF SEEN DOCTOR NGUYEN DURING SICK CALL A COUPLE OF TIMES DURING THESE
11. MONTHS. PLAINTIFF ASKED DOCTOR NGUYEN TO WRITE HIM A SOFT SHOE CHRONO. DOCTOR NGUYEN
12. TOLD PLAINTIFF HE DID NOT WRITE SOFT SHOE CHRONOS. PLAINTIFF TOLD DOCTOR NGUYEN THAT THE
13. PODIATRIST SAID THAT PLAINTIFFS FEET WOULD JUST KEEP DETERIORATING BECAUSE THE LACK OF
14. SUPPORT IN THE JAP FLAPS PLAINTIFF WAS MADE TO WEAR. DOCTOR NGUYEN STILL FAILED TO WRITE A SOFT
15. SHOE CHRONO, TELLING PLAINTIFF THE PODIATRIST WROTE THE CHRONO'S.

16. 57. ON 1-30-06 PLAINTIFF WROTE THE MEDICAL SUPERVISOR C. LEE LETTING HIM KNOW THAT HIS
17. PODIATRIST WAS GOING BY AN OUTDATED MEMO AND DID NOT KNOW HE COULD GIVE PLAINTIFF A CHRONO.
18. 58. C. LEE FAILED TO ACT TO CURE THE SITUATION.

19. 59. ON 3-6-06 PLAINTIFF WENT TO SEE THE PODIATRIST. PLAINTIFF ASKED THE PODIATRIST TO
20. WRITE THE SOFT SHOE CHRONO. PLAINTIFFS FEET HAD DETERIORATED TO THE POINT THAT PLAINTIFF
21. COULD NOT STAND FOR LONG PERIODS OF TIME WITHOUT BEING IN EXCRUCIATING PAIN. THE PODIATRIST
22. TOLD PLAINTIFF HIS HANDS WERE TIED BECAUSE OF THE MEMO. PLAINTIFF SHOWED THE PODIATRIST HIS
23. FEET AND BEGGED HIM TO WRITE THE CHRONO THE PODIATRIST SAID HE COULD ONLY MAKE A RECO-
24. MMENDATION THAT THE YARD DOCTOR WROTE THE CHRONO'S. SEE (PX6)

25. 60. ON 3-6-06 PLAINTIFF WROTE A INMATE APPEAL REQUESTING PROPER MEDICAL CARE: DAMAGES.
26. 61. ON 3-21-06 PLAINTIFF WENT TO SEE DOCTOR NGUYEN. PLAINTIFF TOLD DOCTOR NGUYEN THAT
27. THE PODIATRIST SAID THAT THE YARD DOCTOR IS THE ONE WHO WRITES THE CHRONOS'. DOCTOR NGUYEN
28.

7.

1. CONFESSED THAT HE IS THE ONE THAT WAS SUPPOSE TO WRITE THE CHRONO FOR APPROVAL. HE THEN
2. DID SO. SEE (PX6)

3. 62. PLAINTIFF RECEIVED A COMPREH INSTUE ACCOMMENDATION CHRONO ON 3-25-06, WHICH
4. GRANTED PLAINTIFF HIS PERSONAL SHOES ? ORTHOTICS.

5. 63. THE POLICY WITH SOFT SHOE CHRONO'S IN AD. SEG. WERE ONCE ATTAINING THE CHRONO
6. THE AD. SEG. PROPERTY OFFICER WOULD GET THE PRISONERS SHOES OUT OF HIS PROPERTY.

7. 64. PLAINTIFF SHOWED OFFICER GARCIA HIS CHRONO AND ASKED HIM TO CALL THE PROPERTY
8. OFFICER TO LET HIM KNOW. GARCIA DID SO AND CAME BACK TO TELL PLAINTIFF THAT THE PROPERTY
9. OFFICER SAID HE WOULD GET AROUND TO IT.

10. 65. PLAINTIFF SEEN PROPERTY OFFICERS S. YOUNCE ? M. MENDEZ WORKING THE BUILDING HE
11. WAS IN. PLAINTIFF SHOWED YOUNCE HIS CHRONO AND YOUNCE BECAME UNPROFESSIONAL. PLAINTIFF
12. TOLD YOUNCE THAT THIS WASN'T A REGULAR PROPERTY ISSUE BUT A MEDICAL ISSUE. YOUNCE FABRI-
13. CATED THAT HE WASN'T THE PROPERTY OFFICER ANYMORE. PLAINTIFF THEN TURNED TO PROPERTY OFFI-
14. CER M. MENDEZ AND ASKED WAS HE THE PROPERTY OFFICER. MENDEZ STARTED SINGING IN SPANISH
15. AND KEPT WALKING.

16. 66. LATER THAT MORNING PLAINTIFF SEEN S. YOUNCE AS PLAINTIFF WAS BEING ESCORTED TO
17. THE YARD. PLAINTIFF TOLD YOUNCE HE HAD A SMART MOUTH AND HE DIDN'T HAVE TO GET SMART WITH
18. PLAINTIFF, PLAINTIFF NEVER GOT SMART WITH HIM. OFFICER S.M. RODRIGUEZ GOT IN THE CONVERSA-
19. SATION AND ASKED WHY PLAINTIFF WAS DISRESPECTING HIM. PLAINTIFF TOLD RODRIGUEZ THAT HE
20. WAS NOT DISRESPECTING HIM. HE WAS TALKING TO YOUNCE BUT IF HE CHOSE TO PUT HIMSELF IN IT
21. THAT WAS HIS DOING. RODRIGUEZ SAID "NELL, NOW I KNOW." RODRIGUEZ SAID "NOW YOU KNOW. YOU
22. GOT TO GET YOUR PROPERTY FROM US."

23. 67. PLAINTIFF WENT TO YOUNCE, MENDEZ, ? RODRIGUEZ'S SUPERVISOR SGT. J. I PPOLITO AND
24. HE FAILED TO CURE THE SITUATION BY SAYING "ITS ONLY BEEN A COUPLE OF WEEKS AND YOUR
25. ALREADY COMING TO ME."

26. 68. PLAINTIFF PLACED THE WARDEN M. S. EVANS ON NOTICE ABOUT THE ACTIONS OF S. YOUNCE
27. S.M. RODRIGUEZ ? M. MENDEZ ASKING M.S. EVANS TO SEE THAT PLAINTIFF GET HIS MEDICAL EN-
28.

8.

1. TITIEMENTS. M.S. EVANS FAILED TO CURE OR TAKE AN ACTION TO CURE THE SITUATION.

2. 69. S.N.S.P. HAS CREATED A ADMINISTRATIVE APPEALS SYSTEM THAT FRUSTRATES;
3. IMPEDS MEANINGFUL ACCESS TO COURTS.

4. 70. ON 6-6-06 PLAINTIFF FILED AN INMATE APPEAL DUE TO A POLICY THAT CREATED
5. A CRUEL AND UNUSUAL ENVIROMENT FOR PLAINTIFF, AND SIMULAR SITUATED PRISONERS. THIS
6. POLICY ALLOWS MERE OFFICERS TO BECOME HIGH RANKING OFFICERS ON THE SAME FACI-
7. LITY AS THEY WERE MERE OFFICERS. THIS POLICY ALSO ALLOWS OFFICERS TO GAIN RANK AND
8. BECOME OF RANK AND RECEIVE POSITIONS WHERE THESE OFFICERS ARE IN CHARGE OF OVER-
9. SEEING THE APPEALS PROCESS, ADMINISTRATION SEGREGATION CLASSIFACATION, INVESTI-
10. GATIONS OF STAFF MISCONDUCT & FACILITY PROGRAMS. SEE (PXH)

11. 71. ON 6-27-06 THIS APPEAL WAS RETURNED TO PLAINTIFF UNPROCESSED WITH A SCREEN
12. OUT WITH THE BOX MARKED "NO SIGNIFICANT ADVERSE EFFECT DEMONSTRATED." THE BOTTOM
13. OF THE FORM STATED IF PLAINTIFF ALLEGED THE ABOVE REASON IS **INACCURATED** EXPLAIN.

14. 72. PLAINTIFF SENT THE APPEAL BACK TO E. MEDINA ON 6-27-06 AND EXPLAINED
15. THE ADVERSE EFFECT THE POLICY WAS HAVING ON HIM. ON 7-18-06 E. MEDINA SENT THE
16. APPEAL BACK TO PLAINTIFF UNPROCESSED STATING PLAINTIFFS COMMENTS WERE INAPPRO-
17. PRIATE. PLAINTIFF THEN SENT THE APPEAL TO THE CHIEF INMATE APPEALS BRANCH ASK-
18. FOR GUIDANCE ON HOW TO PROCEED. ON 9-27-06 THE APPEAL WAS SENT BACK TO PLAINTIFF
19. WITH NO CLEAR INSTRUCTIONS ON HOW TO PROCEED SINCE PLAINTIFF HAD DONE THE THINGS
20. SUGGESTED BEFORE WRITING THE CHIEF. SEE (PXH)

21. 73. THE APPEALS COORDINATORS AT S.N.S.P. FIND WAYS TO SCREEN OUT APPEALS THE
22. INSTITUTION DOES NOT WANT TO LITIGATE KNOWING THE COURTS REQUIRE EXHAUSTION OF ADMIN-
23. ISTRATIVE REMEDIES. SEE (PXH)

24.
25.
26.
27.
28.

1. CLAIMS OF RELIEF

1. THE ACTIONS OF D. TRAVERS TO DENY PLAINTIFF DUE PROCESS IN CONNECTION WITH CLASSIFICATION RESULTED IN PLAINTIFF BEING HELD IN CRUEL CONDITIONS OF CONFINEMENT FOR 11 MONTHS IN VIOLATION OF THE FOURTEENTH AND EIGHTH AMENDMENTS OF THE UNITED STATES CONSTITUTION (U.S. CONST.) AND CALIFORNIA STATE LAW. (PXE)

2. THE ACTIONS OF M.S. EVANS, E. SCRIBNER, J.W. MOSS, D. TRAVERS; M.P. MOORE TO CONSPIRE AND USE A EXAGGERATED RESPONSE TO A SECURITY NEED TO DENY PLAINTIFF RIGHTS THE CONSTITUTION AND CALIFORNIA STATE LAW PROVIDES CONSTITUTES CRUEL; UNUSUAL CONDITIONS OF CONFINEMENT FORBIDDEN BY THE EIGHTH AMENDMENT TO THE U.S. CONST. (PXB)

3. THE ACTION OF M.S. EVANS TO NOT ALLOW PLAINTIFF TO PRACTICE HIS BELIEF WITHOUT THE THREAT OF A PUNITIVE ACTION VIOLATED THE FIRST ; FIFTH AMENDMENTS TO THE U.S. CONST. AND CALIFORNIA STATE LAW. (PXB ; PXC)

4. THE ACTIONS OF SGT. SOTELO TO USE CELL SEARCHES TO HARASS WAS IN VIOLATION OF THE FOURTH AMENDMENT TO THE U.S. CONS. AND CALIFORNIA STATE LAW, AND CONSTITUTES CRUEL AND UNUSUAL PUNISHMENT FORBIDDEN BY THE EIGHTH AMENDMENT TO THE U.S. CONST. PXD

5. FOR M.S. EVANS, JAMES TILTON, AND ARNOLD SCHWARZENEGGER TO HAVE A SYSTEM THAT TOLERATES STAFF MISCONDUCT BY SHIELDING WRONGDOERS HAS MADE PLAINTFFS' CONDITIONS OF CONFINEMENTS CRUEL ; UNUSUAL WHICH IS FORBIDDEN BY THE EIGHTH AMENDMENT TO THE U.S. CONST. AND CALIFORNIA STATE LAW. (PXD ; PXH)

6. THE ACTIONS OF L. LAFFERTY AND P.D. VERA TAMPERING AND DELAY PLAINTFFS' MAIL AND A. HEDGPETH FAILING TO CURE THIS WAS IN VIOLATION OF THE FIRST AMENDMENT TO THE U.S. CONST. AND CALIFORNIA STATE LAW. (PX F)

7. THE ACTION OF E. MEDINA TO IMPED, HARASS, AND DENY PLAINTIFF ACCESS TO THE ADMINISTRATIVE FORUM RENDERS CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATIONS' ADMINISTRATIVE APPEALS SYSTEM UNCONSTITUTIONAL IN VIOLATION OF THE EIGHTH

1. AMENDMENT AND FIRST AMENDMENT TO THE U.S. CONST. AND CALIFORNIA STATE LAW (PX H)

2. 8. THE ACTIONS OF NGUYEN BEING DELIBERATE INDIFFERENT TO PLAINTIFFS

3. MEDICAL SITUATION is IN VIOLATION OF THE EIGHTH AMENDMENT TO THE U.S. CONST.

4. AND CALIFORNIA STATE LAW, (PX6)

5. 9. THE ACTIONS OF CHARLES LEE OF NOT UPDATING HIS MEMORANDUM DENIED PLAINTIFF

6. PROPER MEDICAL CARE IN VIOLATION OF THE EIGHTH AMENDMENT TO THE U.S. CONST. AND

7. CALIFORNIA STATE LAW. (PX6)

8. 10. THE ACTIONS OF S.M. RODRIGUEZ S. YOUNCE ; M. MENDEZ OF PURPOSELY WITHHOLDING

9. PLAINTIFFS MEDICAL ACCOMMODATIONS MADE THEM DELIBERATE INDIFFERENT TO PLAINTIFFS

10. MEDICAL IN VIOLATION OF THE EIGHTH AMENDMENT TO THE U.S. CONST. (PX6)

11. 11. THE INACTIONS OF SERGEANT J. IPPOLITO OF FAILING TO SUPERVISE DENIED PLAINTIFF

12. PROPER MEDICAL CARE IN VIOLATION OF THE EIGHTH AMENDMENT TO THE U.S. CONST. (PX6)

13. 12. THE ACTIONS OF M.S. EVANS OF NOT ALLOWING AD.SEG. PRISONERS PROPER SHOES FOR

14. OUTDOOR EXERCISE CONSTITUTES CRUEL AND UNUSUAL PUNISHMENT AND CAUSED PLAINTIFF TO

15. BE INJURED IN VIOLATION OF THE EIGHTH AMENDMENT TO THE U.S. CONST. (PX6)

16. 13. ADDITIONALLY DEFENDANTS S.M. RODRIGUEZ S. YOUNCE ; M. MENDEZ ACTS, OMISSIONS,

17. AND CONDUCT WERE PREDICATED BY AN IMPROPER MOTIVE WHICH CONSTITUTES A CONSCIOUS DISRE-

18. GARD OF PLAINTIFFS CIVIL RIGHTS THEREFORE THOSE DEFENDANTS ARE ALSO LIABLE FOR CIVIL PENAL-

19. TIES AS AUTHORIZED UNDER CAL. CIVIL CODE 52.

20. 14. FOR ARNOLD SCHWARZENEGGER, JAMES TILTON, AND M.S. EVANS TO HAVE A SYSTEM OF CON-

21. STITUTIONAL VIOLATIONS THAT CAUSE CRUEL AND UNUSUAL CONDITIONS OF CONFINEMENT THAT MAKES

22. PLAINTIFFS REHABILITATION A EVERYDAY OBSTACLE CONSTITUTES CRUEL ; UNUSUAL PUNISHMENT

23. FORBIDDEN BY THE EIGHTH AMENDMENT TO THE U.S. CONST.

24. REQUESTED RELIEF

25. WHEREFORE PLAINTIFF REQUEST THE COURT TO GRANT THE FOLLOWING RELIEF :

26. A. AWARD COMPENSATORY DAMAGES INDIVIDUALLY AGAINST EACH DEFENDANT.

27. B. AWARD PUNITIVE DAMAGES AGAINST EACH DEFENDANT.

28.

11.

1.  C. DEMAND FOR JURY TRAIL.

2.  D. AWARD CIVIL PENALTIES AGAINST DEFENDANTS S.M. RODRIGUEZ, S. YOUNCE, M. MENDEZ.

3.  E. PLAINTIFF REQUEST A PERMANENT INJUCTION IN WHICH THE CALIFORNIA STATE

4.  PRISON SYSTEM BE DEEMED UNCONSTITUTIONAL AND BE SEIZED.

5.  F. ANY RELIEF THE COURT DEEMS JUST.

6.

7.  DATED: 2-7-07

8.                         QUILLIE HARVEY        Quillie Harvey

9.

10.           .

11.

12.

13.

14.

15.

16.

17.

18.

19.

20.

21.

22.

23.

24.   .

25.

26.

27.                                    12.

28.



**FILED**

JUL 2 1 2008

RICHARD W. WIEKING
CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

QUILLIE L. HARVEY,

        Plaintiff,

v.

ARNOLD SCHWARZENEGGER, et al.,

        Defendants.

_____/

No. C 07-1244 CRB (PR)

**ORDER REGARDING MOTION TO DISMISS**

(Docket Nos. 10 & 37)

Plaintiff, a prisoner at Salinas Valley State Prison ("SVSP"), filed a pro se complaint under 42 U.S.C. § 1983 alleging various violations of his constitutional rights while incarcerated at SVSP. The court screened the complaint pursuant to 28 U.S.C. § 1915A, recognized four cognizable claims under § 1983 – (1) improper classification; (2) deprivation of outdoor exercise; (3) mail tampering; and (4) deliberate indifference to serious medical needs – and ordered the United States Marshal to serve Medina, Evans, Lee, Rodriguez, Younce, Scribner, Vera, Nguyen, Travers, Lafferty, Mendez, Ippolito, Hedgpeth, Sotelo, Moss, and Moore ("Defendants") at SVSP. Order of Service at 2, 3. The court dismissed the allegations regarding an inadequate administrative appeals system and Governor Schwarzenegger and Secretary Tilton. Id. at 2.

Defendants move to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. They also claim that

1  they are entitled to qualified immunity.  Plaintiff has filed an opposition and Defendants have
2  filed a reply.

3                                    **DISCUSSION**

4          "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need
5  detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds of his
6  'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation
7  of the elements of a cause of action will not do. . . .  Factual allegations must be enough to
8  raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 127 S.
9  Ct. 1955, 1964-65 (2007) (citations omitted).  A motion to dismiss should be granted if the
10 complaint does not proffer "enough facts to state a claim for relief that is plausible on its
11 face."  Id. at 1974.

12         The court must accept as true all material allegations in the complaint, but it need not
13 accept as true "legal conclusions cast in the form of factual allegations if those conclusions
14 cannot be reasonably drawn from the facts alleged." Clegg v. Cult Awareness Network, 18
15 F.3d 752, 754-55 (9th Cir. 1994).  Review is limited to the contents of the complaint,
16 including documents physically attached to the complaint or documents the complaint
17 necessarily relies on and whose authenticity is not contested.  Lee v. County of Los Angeles,
18 250 F.3d 668, 688 (9th Cir. 2001).  The court may also take judicial notice of facts that are
19 not subject to reasonable dispute.  Id.

20 A.     Improper Classification

21         On June 14, 2005, plaintiff was placed in the Administrative Segregation Unit
22 ("ASU") pending adjudication of a rules violation report ("RVR") for possession of a
23 weapon.  He was found guilty and given a Secured Housing Unit ("SHU") term which he
24 served in the ASU until late May 2006.  Plaintiff claims he was denied due process because
25 he should have served the SHU term in the SHU, rather than the ASU, and because Travers'
26 delay in finalizing the RVR caused him to be housed outside of the general population longer
27 than he should have.  He alleges that his eleven-month placement in the ASU precluded him

28

United States District Court
For the Northern District of California

                                         2

1    from obtaining proper shoes for outdoor exercise and from possessing a television or radio.

2    He suggests that he would have been treated better had he been placed in the SHU.

3        Allegations by a prisoner that he was denied due process in conjunction with a

4    disciplinary proceeding do not present a constitutionally cognizable claim unless the

5    deprivation suffered was one of "real substance." Sandin v. Conner, 515 U.S. 472, 477-87

6    (1995). Real substance is limited to freedom from: (1) restraint that imposes "atypical and

7    significant hardship on the inmate in relation to the ordinary incidents of prison life," id. at

8    484, or (2) state action that "will inevitably affect the duration of [a] sentence," id. at 487.

9    Generally, placement in segregated housing in and of itself does not implicate a protected

10   liberty interest. Serrano v. Francis, 345 F.3d 1071, 1078 (9th Cir. 2003).

11       Defendants' motion to dismiss the improper classification claim is granted without

12   leave to amend because there is no indication that Plaintiff's disciplinary placement in the

13   ASU amounted to "atypical and significant hardship on the inmate in relation to the ordinary

14   incidents of prison life," Sandin, 515 U.S. at 484, or state action that "will inevitably affect

15   the duration of [a] sentence," id. at 487. Cf. Wilkinson v. Austin, 545 U.S. 209, 223-25

16   (2005) (indefinite placement in Ohio's "supermax" facility, where inmates are not eligible

17   for parole consideration, imposes an "atypical and significant hardship within the

18   correctional context"); Serrano, 345 F.3d at 1078-79 (finding protected liberty interest

19   implicated when wheelchair-assisted inmate was put in a SHU not designed for disabled

20   persons – where he was denied use of wheelchair, was not able to take a proper shower,

21   could not use the toilet without hoisting himself up by the seat, had to crawl into bed by his

22   arms, could not partake in outdoor exercise in the non-accessible yard, and had to drag

23   himself around a vermin-and cockroach-infested floor – because the placement forced

24   prisoner to endure a situation far worse than a non-disabled person sent to the SHU would

25   have to face).

26   B.    Deprivation of Outdoor Exercise

27       Defendants' motion to dismiss the deprivation of outdoor exercise claim is granted

28   with leave to amend. In order to state a claim under § 1983, plaintiff must allege facts

3

1   showing how each defendant actually and proximately caused the deprivation of a federally

2   protected right. See Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988); Harris v. City of

3   Roseburg, 664 F.2d 1121, 1125 (9th Cir. 1981).  Plaintiff's claim consists of names of people

4   who he alleges harmed him, but Plaintiff fails to link each defendant to his allegations of

5   wrongdoing.  Plaintiff will be afforded an opportunity to amend to allege how Evans,

6   Scribner, Moss, Travers and Moore deprived him of outdoor exercise, and how such

7   deprivation harmed Plaintiff.

8   C.    Mail Tampering

9         Defendant's motion to dismiss the mail tampering claim is denied.  Plaintiff alleges

10  that Lafferty routinely opened his legal mail outside of his presence and sent his mail to the

11  wrong cell.  This is enough to state a § 1983 claim against Lafferty. See, e.g., O'Keefe v.

12  Van Boening, 82 F.3d 322, 325 (9th Cir. 1996) (opening and inspecting of "legal mail"

13  outside  presence of prisoner may have impermissible "chilling" effect on constitutional right

14  to petition government).  Defendants' argument that Plaintiff "has shown nothing more than

15  an accidental opening of an item of legal mail and an accidental routing of his mail to the

16  wrong cell," is an issue to be decided in conjunction with a motion for summary, not a

17  motion to dismiss.  The same holds true for their claim of qualified immunity in connection

18  with the mail tampering claim.

19  D.    Deliberate Indifference to Serious Medical Needs

20        Defendants' motion to dismiss the deliberate indifference to serious medical needs

21  claim is granted with leave to amend.  In order to state a claim under § 1983, Plaintiff must

22  allege facts showing how each defendant actually and proximately caused the deprivation of

23  a federally protected right. See Leer, 844 F.2d at 634; Harris, 664 F.2d at 1125.  He must

24  also allege facts showing that each defendant knew that Plaintiff faced a substantial risk of

25  serious harm and disregarded that risk by failing to take reasonable steps to abate it. See

26  Farmer v. Brennan, 511 U.S. 825, 837 (1994).  He has not done so.  Plaintiff will be afforded

27  an opportunity to amend to allege how Younce, Mendez, Rodriguez, Ippolito, Evans, Nguyen

28  and Lee were deliberately indifferent to his serious medical needs and caused him harm.

United Stat    District Court
For the Northern District of California

4

E.    Other Claims

To whatever extent Plaintiff claims that Sotelo violated his Fourth Amendment rights by wrongfully searching his cell, the claim is dismissed because it is well-established that the Fourth Amendment does not apply to prison cells. See Hudson v. Palmer, 468 U.S. 517, 526 (1984) ("privacy rights for prisoners in their individual cells simply cannot be reconciled with the concept of incarceration and the needs and objectives of the penal institutions").

Hedgpeth, Vera and Medina are dismissed because Plaintiff's allegations that they improperly handled his administrative appeals do not state a § 1983 claim. See Order of Service at 2 (citing Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003), and Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988)).

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss (docket no. 10) is GRANTED with respect to the improper classification, deprivation of outdoor exercise and deliberate indifference to serious medical needs claims (and possible Fourth Amendment claim), and DENIED with respect to the mail tampering claim. The improper classification claim (and possible Fourth Amendment claim) is dismissed without leave to amend, but the deprivation of outdoor exercise and deliberate indifference to serious medical needs claims are dismissed with leave to amend.

Plaintiff shall file an amended complaint, as indicated above, within 30 days of this order. The pleading must be simple and concise and must include the caption and civil case number used in this order and the words FIRST AMENDED COMPLAINT on the first page. Failure to file a proper amended complaint within the designated time will result in the dismissal of this action.

Plaintiff is advised that the amended complaint will supersede the original complaint and all other pleadings. Claims and defendants not included in the amended complaint will not be considered by the court. See King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987).

1    Plaintiff's motion for reconsideration of his request for appointment of counsel

2  (docket no. 37) is denied for lack of exceptional circumstances. See Terrell v. Brewer, 935

3  F.2d 1015, 1017 (9th Cir. 1991).

4  IT IS SO ORDERED.

5  DATED:  **JUL 2 1 2008**

6                                                   CHARLES R. BREYER
                                                    UNITED STATES DISTRICT JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United Sta .    )istrict Court
For the Northern District of California

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

QUILLIE L. HARVEY,                         Case Number: CV07-01244 CRB

      Plaintiff,                          **CERTIFICATE OF SERVICE**

v.

ARNOLD SCHWARZENEGGER et al,

      Defendant.
_____/

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on July 21, 2008, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Quillie L. Harvey H-28106
Salinas Valley State Prison
P.O. Box 1050
Soledad, CA 93960

Dated: July 21, 2008

                Richard W. Wieking, Clerk
                By: Barbara Espinoza, Deputy Clerk





Citation/Title
179 F.3d 771, Burnsworth v. Gunderson, (C.A.9 (Ariz.) 1999)

**\*771**  179 F.3d 771

1999 Daily Journal D.A.R. 5556

United States Court of Appeals,
Ninth Circuit.

**Harry Edward BURNSWORTH, Plaintiff-Appellee,**

**v.**

**Greg GUNDERSON; Dan Vanelli; Lt. Ballard; Anne Reeder; Paul Clark; Merry Lutz; Thomas Lyerla,
Defendants-Appellants.**

**No. 97-16599.**
Submitted May 10, 1999 (FN1)

Filed June 7, 1999.

Prisoner filed § 1983 action in which he alleged violation of due process in
disciplinary escape conviction. The United States District Court for the
District of Arizona, Richard M. Bilby, J., found no due process violation, but
ordered conviction expunged from prison records, and prison officials appealed.
The Court of Appeals, Pregerson, Circuit Judge, held that: (1) due process was
violated when a prison disciplinary hearing board convicted an inmate of escape
after that board held a hearing at which no shred of evidence of the inmate's
guilt was presented, even if inmate demonstrated no cognizable liberty interest,
and (2) expungement was the appropriate remedy.

Affirmed.

West Headnotes

[1]  Constitutional Law ☞272(2)

92 ----
92XII Due Process of Law
92k256 Criminal Prosecutions
92k272 Execution of Sentence
92k272(2) Imprisonment and Incidents Thereof.

Prison disciplinary convictions must be supported by "some evidence" in order
to satisfy procedural due process. U.S.C.A. Const.Amend. 14.

[2]  Prisons ☞13(10)

310 ----

© 2005 Thomson/West. No claim to original U.S. Govt. works.

Page 2

179 F.3d 771, Burnsworth v. Gunderson, (C.A.9 (Ariz.) 1999)

       310k13 Custody and Control of Prisoners
        310k13(7) Requisites of Proceedings
         310k13(10) Review and Judicial Supervision.

 A district court may not order expungement of a prison disciplinary conviction after concluding that prison officials have not violated prisoner's rights.

[3]  Constitutional Law ☞255(1)

    92 ----
      92XII Due Process of Law
        92k255 Deprivation of Life or Liberty in General
         92k255(1) In General.

    [See headnote text below]

[3]  Constitutional Law ☞278(1)

    92 ----
      92XII Due Process of Law
        92k278 Deprivation of Property in General
         92k278(1) In General.

 The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property.  U.S.C.A. Const.Amend. 14.

[4]  Constitutional Law ☞272(2)

    92 ----
      92XII Due Process of Law
        92k256 Criminal Prosecutions
        92k272 Execution of Sentence
         92k272(2) Imprisonment and Incidents Thereof.

 The possibility of denial of parole at some later date as a result of prisoner's misconduct record does not amount to the denial of a "liberty interest," invoking procedural due process protections.  U.S.C.A. Const.Amend. 14.

[5]  Constitutional Law ☞257

    92 ----
      92XII Due Process of Law
        92k256 Criminal Prosecutions
        92k257 In General.

 Once society has validly convicted an individual of a crime and therefore established its right to punish, the demands of due process are reduced

© 2005 Thomson/West. No claim to original U.S. Govt. works.

179 F.3d 771, Burnsworth v. Gunderson, (C.A.9 (Ariz.) 1999)

accordingly.   U.S.C.A. Const.Amend. 14.

[6]   Constitutional Law ☞272(2)

    92 ----
        92XII Due Process of Law
          92k256 Criminal Prosecutions
            92k272 Execution of Sentence
              92k272(2) Imprisonment and Incidents Thereof.

    [See headnote text below]

[6]   Prisons ☞13(7.1)

    310 ----
        310k13 Custody and Control of Prisoners
          310k13(7) Requisites of Proceedings
            310k13(7.1) In General.

 Due process was violated when a prison disciplinary hearing board convicted an
inmate of escape after that board held a hearing at which no shred of evidence
of the inmate's guilt was presented, even if inmate demonstrated no cognizable
liberty interest.  U.S.C.A. Const.Amend. 14.

[7]   Prisons ☞13(10)

    310 ----
        310k13 Custody and Control of Prisoners
          310k13(7) Requisites of Proceedings
            310k13(10) Review and Judicial Supervision.

 Expungement of disciplinary conviction from prison records was the appropriate
remedy for due process violation in finding escape when it was supported by no
shred of evidence.  U.S.C.A. Const.Amend. 14.

 Wanda E. Hofmann, Assistant Attorney General, Tucson, Arizona, for the
defendants-appellants.

 *772  Harry Edward Burnsworth, Florence, Arizona, pro se, for the plaintiff-
appellee.

 Appeal from the United States District Court for the District of Arizona;
Richard M. Bilby, Senior District Judge, Presiding.  D.C. No. CV-95-00404-RMB.

 Before:  LAY, (FN2) PREGERSON, and HAWKINS, Circuit Judges.

 PREGERSON, Circuit Judge:

 Defendants are officials of the Arizona Department of Corrections (ADOC).

© 2005 Thomson/West. No claim to original U.S. Govt. works.

179 F.3d 771, Burnsworth v. Gunderson, (C.A.9 (Ariz.) 1999)

They appeal the district court's order that an escape conviction be expunged
from Plaintiff Harry Edward Burnsworth's prison records.  The district court
ordered defendants to expunge plaintiff's record because it found the escape
conviction to be based on no evidence whatsoever.  Defendants argue that the
district court erred by ordering them to expunge a disciplinary conviction from
plaintiff's prison records because the court previously concluded that
defendants had not violated plaintiff's due process rights.  We affirm.

I.

    Plaintiff was an inmate at the Arizona State Prison Complex in Tucson,
Arizona.  In early 1995, a confidential prison informant told prison officials
that plaintiff was going to be hurt because he allegedly owed a debt.
Accordingly, Officer Gunderson told plaintiff on February 3, 1995, that he was
going to place plaintiff in protective segregation.  Plaintiff requested to
remain in the general population because he did not believe the threat was
serious.  Gunderson granted the request but required plaintiff to sign a
protective custody waiver form.

    On March 14, 1995, plaintiff approached Gunderson and Officer O'Hara and
requested protective segregation because he was having problems with a couple of
other inmates.  Plaintiff stated that if he were returned to the general
population, his only option would be to "hit the fence."   Plaintiff was then
transferred to a lockdown facility.

    The next day, Gunderson and O'Hara asked plaintiff to explain what he meant by
"hit the fence."   Plaintiff explained that if he were returned to the general
population, he would be forced to "hop the fence and run all the way to Tucson."
Gunderson then charged plaintiff with escape, an ADOC disciplinary infraction.

    A preliminary hearing was held March 16, 1995.  Plaintiff was present and was
permitted to question Officer O'Hara.  A disciplinary hearing was held on April
7, 1995.  Plaintiff was found guilty and sanctioned--40 hours extra duty and 30
days in Parole Class III.  In addition, Disciplinary Hearing Officer Lt. Charles
Ballard recommended plaintiff be reclassified as an escape and security risk.

    Plaintiff appealed to Deputy Warden Daniel Vanelli, who upheld Ballard's
findings.  Central Office Classification Officer Capt.  Merry Lutz denied
plaintiff's second appeal.

    On August 1, 1995, plaintiff appeared before the Institutional Classification
Committee (ICC).  The ICC recommended that plaintiff be reclassified as a
security risk.  This recommendation was based on the March escape charge and the
fact that plaintiff had been found guilty of other prison disciplinary
infractions in the past.  Deputy Warden Vanelli reviewed and concurred in the
ICC's recommendation, and plaintiff was transferred to a maximum security
facility at Florence, Arizona.

    Plaintiff filed this 42 U.S.C. § 1983 action in which he alleged that the

© 2005 Thomson/West. No claim to original U.S. Govt. works.

179 F.3d 771, Burnsworth v. Gunderson, (C.A.9 (Ariz.) 1999)

prison's disciplinary and classification procedures violated his due process
rights.   Plaintiff also alleged that defendants had conspired to retaliate
against him for filing grievances *773   and assisting other inmates in bringing
§ 1983 actions.   Plaintiff sought a declaration that the disciplinary and
classification procedures violated his rights under the due process clause of
the Fourteenth Amendment.   Plaintiff also sought money damages on his
retaliation claim.

   On summary judgment, the district court granted plaintiff's request for a
declaratory judgment that defendants had violated his procedural due process
rights.   In granting this relief, the district court found that "there was no
evidence, much less 'some evidence' that [plaintiff attempted to escape]," and
that plaintiff "is entitled to judgment as a matter of law that his March 16,
1995 ... disciplinary hearing was devoid of evidence to support a finding of
guilty of escape."   See Superintendent v. Hill, 472 U.S. 445, 457, 105 S.Ct.
2768, 86 L.Ed.2d 356 (1985) (requiring that prison disciplinary convictions be
supported by "some evidence" in order to satisfy due process).   Accordingly, the
district court concluded that "the hearing violated Plaintiff's Fourteenth
Amendment constitutional rights."   The district court ordered that the "finding
of guilt ... be removed from Plaintiff's inmate record."

   Defendants moved the court to reconsider its ruling.   The court agreed to do
so.   On February 18, 1997, the court reviewed Sandin v. Conner, 515 U.S. 472,
115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), and determined that plaintiff's claims
did not implicate a protected liberty interest.   The court then concluded that
defendants were entitled to judgment as a matter of law on plaintiff's
procedural due process claim.   The court set a trial date for plaintiff's
remaining retaliation claims.

   Plaintiff then filed a "Request that Court Order Defendants to Expunge
Conviction from Files;   Motion to Reconsideration Court's Latest Order."   The
court denied the motion on March 27, 1997.

   On or before the day the trial on plaintiff's retaliation claims was to begin,
plaintiff moved to dismiss those claims.   On June 26, 1997, the court granted
plaintiff's motion and dismissed plaintiff's claims with prejudice.

   In dismissing plaintiff's remaining claims, the court noted that plaintiff's
escape conviction still remained on his ADOC record.   After again reviewing
Sandin, the court sua sponte vacated its March 27, 1997, order.   The court noted
that, unlike the prison officials in Sandin, defendants here refused to expunge
plaintiff's record of the unsubstantiated escape conviction.   The court then
restated its belief that plaintiff had not "experience[d] an atypical and
significant hardship in relation to ordinary incidents of prison life when he
was transferred to another prison facility."   But the court nevertheless
reasoned that expungement of the escape conviction from plaintiff's record was
"appropriate," and that "Plaintiff should not have to explain away the
conviction at any future proceeding, including future parole hearings."
Accordingly, the court ordered that "Defendants shall expunge Plaintiff Harry

© 2005 Thomson/West. No claim to original U.S. Govt. works.

Page 6

179 F.3d 771, Burnsworth v. Gunderson, (C.A.9 (Ariz.) 1999)

Edward Burnsworth's escape charge."   It is this order that defendants appeal.

II.

[1] As we have noted, the district court found that "there was no evidence, much less 'some evidence' that [plaintiff attempted to escape]." Plaintiff correctly argues that prison disciplinary convictions must be supported by "some evidence" in order to satisfy procedural due process. *See Hill,* 472 U.S. at 457, 105 S.Ct. 2768.

[2] But defendants are also correct in their argument that a district court commits error if it orders expungement of a disciplinary conviction after concluding that defendants had not violated plaintiff's rights. *See General Bldg. Contractors Ass'n, Inc. v. Pennsylvania,* 458 U.S. 375, 399, 102 S.Ct. 3141, 73 L.Ed.2d 835 (1982) (a district court may not grant "injunctive relief against a party found not to have violated any substantive right").

**\*774** The disposition of this appeal, therefore, hinges on whether defendants violated plaintiff's procedural due process rights.

A.

[3] It is well-established that "[t]he requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Board of Regents v. Roth,* 408 U.S. 564, 569, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *see Erickson v. United States,* 67 F.3d 858, 861 (9th Cir.1995) (" '[a] due process claim is cognizable only if there is a recognized liberty or property interest at stake' ") (quoting *Schroeder v. McDonald,* 55 F.3d 454, 462 (9th Cir.1995)).

[T]hese interests will be *generally* limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

*Sandin,* 515 U.S. at 483, 115 S.Ct. 2293 (citations omitted) (emphasis added).

Defendants do not argue that plaintiff was afforded a fair hearing.   Rather, defendants argue that plaintiff cannot be heard to complain that his disciplinary process violated due process because he has not demonstrated the existence of a "liberty interest" as required by the Court in *Sandin*.   The essence of defendants' argument is that inmates must demonstrate the existence of a liberty interest before they can argue that they are entitled to procedural due process. *See Erickson,* 67 F.3d at 861.

[4] Moreover, defendants argue that plaintiff was not entitled to relief in the district court because (1) the Supreme Court has generally limited a prisoner's "liberty interests" to those restraints which "impose[ ] atypical and

© 2005 Thomson/West. No claim to original U.S. Govt. works.

179 F.3d 771, Burnsworth v. Gunderson, (C.A.9 (Ariz.) 1999)

significant hardship on the inmate in relation to the ordinary incidents of prison life," *Sandin,* 515 U.S. at 483, 115 S.Ct. 2293;  (2) the district court concluded that plaintiff suffered no such atypical hardship; (FN3)  and (3) the plaintiff has not contested this conclusion.  We disagree.

B.

[5] [6] It is true that "once society has validly convicted an individual of a crime and therefore established its right to punish, the demands of due process are reduced accordingly." *Ohio Adult Parole Authority v. Woodard,* 523 U.S. 272, ----, 118 S.Ct. 1244, 1253, 140 L.Ed.2d 387 (1998) (O'Connor, J., concurring in part and concurring in the judgment) (quotation omitted).  But it is incorrect to state that due process is not violated when a prison disciplinary hearing board convicts an inmate of escape after that board holds a hearing at which no shred of evidence of the inmate's guilt is presented.  *See Hill,* 472 U.S. at 454, 105 S.Ct. 2768 ("revocation of good time [credits] does not comport with 'the minimum requirements of procedural due process' unless the findings of the prison disciplinary board are supported by *some* evidence in the record"); *California v. Green,* 399 U.S. 149, 187 n. 20, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970) (Harlan, J., concurring) ("[d]ue process does not permit a conviction based on no evidence"); *Thompson v. City of Louisville,* 362 U.S. 199, 206, 80 S.Ct. 624, 4 L.Ed.2d 654 (1960) ("Just as 'Conviction upon a charge not made would be sheer denial of due process,' so is it a violation of due process to convict and punish a man  **\*775.** without evidence of his guilt.") (quotation, citation, and footnotes omitted).

In this case, plaintiff's due process rights are violated even if plaintiff has demonstrated no cognizable liberty interest.  For example, it is well-established that prisoners have no liberty interest in clemency proceedings because the decision to grant or deny clemency rests wholly in the discretion of the executive.  *See Olim v. Wakinekona,* 461 U.S. 238, 249, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983); *Woratzeck v. Arizona Bd. of Executive Clemency,* 117 F.3d 400, 403 (9th Cir.1997).  But a majority of the justices of the Supreme Court nonetheless believe that "some minimal procedural safeguards apply to clemency proceedings." *Woodard,* 523 U.S. at ----, 118 S.Ct. at 1254 (O'Connor, J., concurring in part and concurring in the judgment).  (FN4)

<u>And the concept that once the state conducts a hearing it must be a fair one is not limited to the clemency context.</u>  In his separate opinion in *Woodard,* Justice Stevens notes that "[e]ven if a State has no constitutional obligation to grant criminal defendants a right to appeal, when it does establish appellate courts, the procedures employed by those courts must satisfy the Due Process Clause." *Id.* at ----, 118 S.Ct. at 1255 (Stevens, J. concurring in part and dissenting in part) (citing *Evitts v. Lucey,* 469 U.S. 387, 396, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985)).  "[E]ven if a State has no duty to authorize parole or probation, if it does exercise its discretion to grant conditional liberty to convicted felons, any decision to deprive a parolee or a probationer of such conditional liberty must accord that person due process." *Id.* (Stevens, J., concurring in part and dissenting in part) (citing *Morrissey v. Brewer,* 408 U.S.

© 2005 Thomson/West. No claim to original U.S. Govt. works.

179 F.3d 771, Burnsworth v. Gunderson, (C.A.9 (Ariz.) 1999)

471, 480-90, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) and *Gagnon v. Scarpelli,* 411 U.S. 778, 781-82, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973)).

   *Hill* and other cases stating that a prisoner has an interest in avoiding punishments arbitrarily imposed only "[w]here a prisoner has a liberty interest" do not compel a contrary conclusion.  472 U.S. at 454, 105 S.Ct. 2768.  The Court in *Hill* did not address a situation where a conviction was totally unsupported by evidence. *See id.* at 450, 105 S.Ct. 2768.  Rather, *Hill,* like *Wolff v. McDonnell,* 418 U.S. 539, 547, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), restates the fundamental principle of due process in prison disciplinary hearings--"the minimum requirements of procedural due process" require that "the findings of the prison disciplinary board [be] supported by some evidence in the record." *Hill,* 472 U.S. at 454-55, 105 S.Ct. 2768 (also stating that "[r]equiring a modicum of evidence to support a [prison disciplinary's board's decision] will help to prevent arbitrary deprivations without threatening institutional interests or imposing undue administrative burdens").

III.

   [7] We hold that the district court's expungement order was the appropriate remedy for the wrong suffered by plaintiff. *See United States v. Sweeney,* 914 F.2d 1260, 1264 (9th Cir.1990) (appropriateness of expungement remedy is judged on a case-by-case basis and is appropriate "where the maintenance of such records would be fundamentally unfair") (quotation omitted).  A contrary conclusion ignores the core of our concept of procedural due process. *See Wolff,* 418 U.S. at 558, 94 S.Ct. 2963 ("The touchstone of due process is protection of the individual against arbitrary action of government.").

   AFFIRMED.

   (FN1.) The panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R.App. P. 34(a);  9th Cir. R. 34-4.

   (FN2.) The Honorable Donald P. Lay, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation.

   (FN3.) Defendants correctly note that the possibility of denial of parole at some later date does not amount to the denial of a liberty interest.  As the Court noted in *Sandin,* "[t]he decision to release a prisoner rests on a myriad of considerations," and an inmate is generally "afforded procedural protection at his parole hearing in order to explain the circumstances behind his misconduct record." 515 U.S. at 487, 115 S.Ct. 2293.  The Court in *Sandin* held that "[t]he chance that a finding of misconduct will alter the balance is simply too attenuated to invoke the procedural guarantees of the Due Process Clause." *Id.*

*775_ (FN4.) Justice O'Connor's opinion was joined by Justices Souter, Ginsburg and Breyer.  Justice Stevens, who concurred in part and dissented in part in *Woodard* agreed that due process imposed a constitutional minimum standard of

© 2005 Thomson/West. No claim to original U.S. Govt. works.

179 F.3d 771, Burnsworth v. Gunderson, (C.A.9 (Ariz.) 1999)

  fairness.  *See Woodard*, 523 U.S. at ---- - ----, 118 S.Ct. at 1254-55
  (Stevens, J., concurring in part and dissenting in part) (some "minimal"
  requirements of due process apply in clemency proceedings).

© 2005 Thomson/West. No claim to original U.S. Govt. works.

STATE OF CALIFORNIA
COUNTY OF MONTEREY

(C.C.P. SEC. 466 & 2015.5; 28 U.S.C. SEC. 1746)

I, Quillie Harvey declare under penalty of perjury that: I am
the PlAiNtiFF in the above entitled action; I have read the foregoing documents
and know the contents thereof and the same is true of my own knowledge, except as to matters
stated therein upon information, and belief, and as to those matters, I believe they are true.

Executed this 26TH day of August , 2008 , at Salinas Valley State
Prison, Soledad, California 93960-1050.

(Signature) _Quillie Harvey_
DECLARANT/PRISONER

-----------------------------------------------------------------------------------------------

PROOF OF SERVICE BY MAIL
(C.C.P. SEC 1013(a) & 2015.5; 28 U.S.C. SEC. 1746)

I, Quillie Harvey , am a resident of California State Prison, in the County of
Monterey, State of California; I am over the age of eighteen (18) years and am/am not a party of
the above entitled action. My state prison address is: P.O. Box 1050, Soledad, California 93960-
1050.

On August 26 , 2008 , I served the foregoing: MoTioN FoR ReCoNSidERA-
TioN ; OBJECTioN To THE CoVRT FiNdiNGS

_____

(Set forth exact title of document(s) served)

On the party(s) herein by placing a true copy(s) thereof, enclosed in sealed envelope(s), with
postage thereof fully paid, in the United States Mail, in a deposit box so provided at Salinas
Valley State Prison, Soledad, California 93960-1050.

OFFiCE oF THE CLERK, UNiTEd STATES DiSTRiCT CoVRT
NORTHERN DiSTRiCT oF CALiFoRNiA
450 GoldEN GATE AVENVE
SAN FRANCiSCO, CA 94102

(List parties served)

There is delivery service by United States Mail at the place so addressed, and/or there is regular
communication by mail between the place of mailing and the place so addressed.

I declare under penalty of perjury that the foregoing is true and correct. _Quillie Harvey_

DATED: 8-26- 2008

Willie Harvey H-28106
Salinas Valley State Prison
P.O. Box 1050 C-1-108
Soledad, CA. 93960

LEGAL MAIL ONLY

STATE PRISON
GENERATED MAIL

RECEIVED

AUG 28 2008

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

CRB

Office of The Clerk, U.S. District Court
Northern District of California
450 Golden Gate Avenue
San Francisco, CA. 94102



UNITED STATES POSTAGE
$ 01.85°
PITNEY BOWES
02 1A
0004397458    AUG 27 2008
MAILED FROM ZIP CODE 93960

c/o Burg   8/26/08